Filed 6/15/15

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| BONNIE KATZENSTEIN, as Trustee, etc.,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CHABAD OF POWAY,<br><br>    Defendant and Appellant. | D066340<br><br><br>(Super. Ct. No. 37-2013-00034698-<br> PR-TR-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Julia C.

Kelety, Judge.  Appeal dismissed.


Blumenthal, Nordrehaug & Bhowmik, Norman B. Blumenthal and Kyle R.

Nordrehaug for Defendant and Appellant.

Hughes & Pizzuto, Shannon N. Montisano and Anne M. Rudolph for Plaintiff and

Respondent.

Respondent Bonnie Katzenstein (Trustee), in her capacity as trustee of the

Feinberg Family Trust Agreement dated October 30, 1984, as amended (Trust), filed a

petition in probate court (Petition) following the death of Robert Feinberg (Decedent).

Decedent was the cosettlor and former cotrustee of the Trust and the named insured in two life insurance policies. In the Petition, Trustee sought: (1) a determination that the Trust is the beneficiary of, and therefore entitled to the proceeds from, one of the insurance policies; and (2) damages against Chabad of Poway (Chabad) for interfering with the payment of that policy's benefits to the Trust. Chabad responded to the Petition by filing a document entitled "Claimant's Objection and Counter Claim [*sic*] to Petition filed by Trustee to Determine Ownership of Life Insurance Policy Proceeds" (Objection and Counterclaim).

In an unsigned minute order following summary judgment proceedings initiated by Trustee, the court sua sponte struck Chabad's Objection and Counterclaim on the basis that the Code of Civil Procedure precludes a party from seeking affirmative relief in an answer. Chabad appeals. However, because this unsigned minute order is not an appealable order under either the Code of Civil Procedure or the Probate Code, we lack jurisdiction and will dismiss Chabad's appeal.

I.

BACKGROUND FACTS AND PROCEDURE[1]

According to the Petition, in 1984 Decedent and his wife executed the documents that established the Trust, and they amended it in 1999 and 2004. Decedent, whose wife

---

[1] Because of the disposition of this appeal, our recitation of the facts will be limited and based in part on allegations in the Petition and the Objection and Counterclaim (both of which are verified), as opposed to evidence in support of or in opposition to Trustee's motion for summary judgment described in the text *post*.

had predeceased him, died in August 2012.  Upon the death of Decedent, according to the terms of the Trust, Trustee became the sole successor trustee and has remained the sole successor trustee ever since.  Trustee alleged that in 1984 Decedent purchased Genworth Life Insurance Company policy No. 00084978 (Genworth policy) and that at all times the Trust was the named beneficiary of the Genworth policy.  Trustee sought both a declaration that the Genworth policy benefits belong to the Trust and an award of damages against Chabad for interfering with the payment of the Genworth policy benefits to the Trust as the named insured.  (Prob. Code, §§ 850, subd. (a)(3)(A), 17200, 859.)[2]

In the Objection and Counterclaim, Chabad alleged it is a nonprofit organization that includes at least a Jewish synagogue and a senior center.[3]  Chabad contended that Decedent gave it "an irrevocable pledge" of the death benefits in two life insurance policies — the Genworth policy and Sun Life Financial Life Insurance policy No. 0004097490 (together the Policies) — in exchange for renaming the senior center the " 'Robert Feinberg Sunshine Club' to be operated [by Chabad] after [Decedent's] death by

---

[2]     Probate Code section 850, subdivision (a)(3)(A) allows a trustee to file a petition requesting an order where the trustee holds property "claimed to belong to another."  Probate Code section 17200 allows a trustee to file a petition "concerning the internal affairs of the trust," which include instructing the trustee.  (*Id.*, subds. (a), (b)(6).)  Probate Code section 859 allows the court, upon a showing "that a person has in bad faith wrongfully taken, concealed, or disposed of [trust] property," to award damages against the person "for twice the value of the property recovered" in the action and reasonable attorney fees and costs.

[3]     A Chabad member responsible for creating a Web site for the senior center described the center as a place that "provides seniors in North County a place to enjoy warm, nourishing meals as well as friendship with other seniors and congregation members."

use of the [P]olicies' death benefits."[4]  To this end, according to the Objection and Counterclaim, Chabad renamed the senior center and publicized Decedent's name in connection with receiving the pledge.[5]  In addition to alleging facts which Chabad contends required the court to deny the relief Trustee seeks in the Petition, Chabad's Objection and Counterclaim also contained affirmative claims for relief against Trustee based on unjust enrichment and breach of contract.

In a response to Chabad's Objection and Counterclaim, Trustee denied the material allegations and affirmatively asserted that any document signed by Decedent purporting to gift the Genworth policy benefits to Chabad was unenforceable because "the signature was obtained by fraud, duress, undue influence or when [Decedent] lacked the capacity to sign such documents."

Following discovery, Trustee brought a motion for summary judgment or in the alternative "for summary adjudication of the issue of whether the [Genworth policy's] life insurance proceeds are the property of the [Trust]."  Chabad opposed the motion, and Trustee filed a reply.

---

[4]    Actually, at one place Chabad alleged that Decedent made "an irrevocable pledge" of the Policies' benefits, whereas elsewhere Chabad alleged that Decedent made "an irrevocable promise" to Chabad for the Policies' benefits "or the equivalent sum."

[5]    In the summary judgment proceedings, discussed in the text *post*, Trustee presented evidence in support of the argument that Chabad renamed the senior center in consideration of a $120,000 payment, in or around May 2003, that Robert made to Chabad prior to his death.

4

The court issued a lengthy (five-page single-spaced) tentative ruling:  (1) denying summary judgment on the basis that the motion did not mention Trustee's claim for damages under Probate Code section 859; (2) granting summary adjudication on the basis that, because the Genworth policy designated the Trust as the sole beneficiary, there were no triable issues of material fact as to Trustee's claim that the Genworth policy benefits were property of the Trust; and (3) sua sponte striking the Objection and Counterclaim on the basis that, in responding to the Petition, Chabad was statutorily precluded from seeking affirmative relief (i.e., the claims against Trustee based on unjust enrichment and breach of contract).  In this latter regard (striking the Objection and Counterclaim — the only ruling at issue in this appeal), the court relied on Code of Civil Procedure[6] sections 436, subdivision (b), and 431.30, subdivision (c), and applied them to the underlying proceeding according to Probate Code section 1000.[7]

The court entertained oral argument, during which most of the exchange concerned the tentative striking of Chabad's Objection and Counterclaim.[8]  In part, the

---

[6]    All further statutory reference are to the Code of Civil Procedure unless otherwise specified.

[7]    "The court may . . . at any time in its discretion, and upon terms it deems proper: [¶] . . . [¶] (b) Strike out all or any part of any pleading not drawn or filed in conformity with the laws of this state . . . ."  (§ 436, subd. (b).)  "Affirmative relief may not be claimed in the answer."  (§ 431.30, subd. (c).)  "Except to the extent that [the Probate C]ode provides applicable rules, the rules of practice applicable to civil actions . . . apply to, and constitute the rules of practice in, proceedings under this code."  (Prob. Code, § 1000.)

[8]    The court also received clarification regarding the Policies' benefits.  According to counsel, the proceeds from the Sun Life Financial policy had already been paid to the

court described to Chabad's counsel (who stated that he was representing Chabad on a pro bono basis) some of the differences between the procedures in the Code of Civil Procedure and the Probate Code, explaining that claims in probate "need[] to be presented properly." At the conclusion of the hearing, the court confirmed its tentative ruling, explained in detail the bases of its rulings and filed *an unsigned minute order* (the Order) consistent with the tentative ruling, namely, (1) denying Trustee's motion for summary judgment, because the motion did not deal with Trustee's pending claim for damages; (2) granting Trustee's motion for summary adjudication, because the beneficiary statement in the Genworth policy named the Trust; and (3) sua sponte striking Chabad's Objection and Counterclaim, because it improperly asserted claims for affirmative relief in the response to the Petition.

Trustee gave written notice of entry of the Order, and Chabad timely appealed from the Order.

Prior to briefing, Trustee filed a motion to dismiss the appeal on the basis that an order granting summary adjudication is a nonappealable order. More specifically, Trustee argued that, because the Order did not dispose of the entire matter — e.g., Trustee still had pending a claim for damages against Chabad in the Petition — the Order was interlocutory, and we lacked jurisdiction to hear the appeal. Chabad opposed the

Trust according to the beneficiary designation, and the parties agreed that Genworth could pay the proceeds from the Genworth policy to the trust account of one of the attorneys. Once again, in the Petition, Trustee sought relief related only to the Genworth policy, whereas in the Objection and Counterclaim, Chabad sought relief related to both Policies.

6

motion on two grounds: (1) because the Order "effectively disposed of the entire case," it was "final and appealable" under section 904.1, subdivision (a)(1); and (2) because the Order adjudicated and denied payment of Chabad's claim, it was appealable under Probate Code section 1300 and, thus, section 904.1, subdivision (a)(10). At the time, we deferred the motion until the merits briefing could be completed, directed the parties' attention to subdivision (d) of Probate Code section 1300 (which makes appealable an order "[d]irecting or allowing payment of a debt, claim, or cost") and requested the parties "to address in their respective appellate briefing whether the [Order] directed or allowed the payment of a claim." The parties have discussed the applicability of Probate Code section 1300, subdivision (d) in their merits briefs, and not surprisingly they disagree: Chabad argues the Order is appealable under the statute, and Trustee argues it is not.[9]

Meanwhile, following briefing, on different jurisdictional grounds, we became concerned because the record on appeal does not contain a judgment or signed order of dismissal, only an unsigned minute order. Accordingly, we directed the parties to section 581d[10] — which requires that an order of dismissal be in writing, *signed by the court* and filed in the action — and asked them to provide supplemental letter briefs

---

[9]    Because we dismiss the appeal on other grounds, Trustee's motion is moot, and we deny it on that basis.

[10]    Section 581d provides in relevant part: "All dismissals ordered by the court shall be in the form of a written order *signed by the court* and filed in the action and those orders when so filed shall constitute judgments and be effective for all purposes . . . ." (Italics added.)

7

addressing the issue whether, in the context of this appeal, an unsigned minute order is an appealable order for purposes of appellate jurisdiction. (Gov. Code, § 68081.) We have received and considered the parties' letter briefs.[11]

II.

## BECAUSE AN UNSIGNED MINUTE ORDER IS NOT APPEALABLE, WE LACK JURISDICTION AND MUST DISMISS THE APPEAL

A. *Introduction*

Appellate courts have jurisdiction over a direct appeal, like the present one, only where there is an appealable order or judgment. (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 696 (*Griset*); *Jennings v. Marralle* (1994) 8 Cal.4th 121, 126 (*Jennings*) [an appealable order or judgment "is a jurisdictional prerequisite to an appeal"].) "A trial court's order is appealable when it is made so by statute." (*Griset*, at p. 696; see *Dana Point Safe Harbor Collective v. Superior Court* (2010) 51 Cal.4th 1, 5 ["right to appeal is wholly statutory," citing § 904.1].)

As we noted *ante*, except to the extent that the Probate Code provides applicable rules, "the rules of practice applicable to civil actions . . . apply to, and constitute the rules of practice in, proceedings under th[e Probate C]ode." (Prob. Code, § 1000.) Given this background, we begin with the understanding that, in a civil action *not under* the Probate Code, an order striking an answer and counterclaim is not an appealable order.

---

11     We have not considered the statement in Chabad's letter regarding court proceedings *in June 2015* or the statement in and attachment to Trustee's letter concerning court proceedings *in May 2015*. (See *In re Zeth S.* (2003) 31 Cal.4th 396, 407-410, 413 [improper for Court of Appeal to look to postjudgment evidence outside of record on appeal and not considered by trial court].)

8

(*Hill v. Wrather* (1958) 158 Cal.App.2d 818, 820-821 [order striking affirmative defenses and counterclaim]; *Yandell v. City of Los Angeles* (1931) 214 Cal. 234, 235 [order striking cross-complaint, but recognizing same rule for order striking counterclaim]; *Keenan v. Dean* (1955) 134 Cal.App.2d 189, 191 [order striking counterclaim]; *Merchants Nat. Bank v. Clark-Parker Co.* (1929) 97 Cal.App. 757 [order striking counterclaim without leave to amend]; *Hayward Union High School Dist. v. Madrid* (1965) 234 Cal.App.2d 100, 106 [order striking answer and cross-complaint].) That is because, in a civil action *not under* the Probate Code, where an action contains both a complaint and a counterclaim (or cross-complaint) involving the identical parties, both must be resolved before there is a final appealable judgment. (*ECC Construction, Inc. v. Oak Park Calabasas Homeowners Assn.* (2004) 122 Cal.App.4th 994, 1002 [complaint and cross-complaint]; *Hill*, at p. 820 [complaint and counterclaim].) Our focus now becomes whether the result is different in an action brought *under* the Probate Code.

B.      *Probate Code Section 1300, Subdivision (d)*

At our request, the parties briefed whether Probate Code section 1300, subdivision (d) provides the statutory basis on which we have jurisdiction — namely, whether the Order directed or allowed payment of a claim.[12]

Chabad argues that the "legal effect" of the Order — which in part granted summary adjudication (by which Trustee is entitled to the Genworth policy benefits) and

---

[12]      "In all proceedings governed by this code, an appeal may be taken from the making of, or the refusal to make, any of the following orders:  [¶] . . . [¶]  (d) Directing or allowing payment of a debt, claim, or cost."  (Prob. Code, § 1300, subd. (d).)

9

in part struck the Objection and Counterclaim — adjudicated the merits of both Trustee's Petition and Chabad's Objection and Counterclaim. (Without citing Prob. Code, § 1300, subd. (d), Chabad made the same argument in opposition to Trustee's motion to dismiss.) We agree with Chabad that "the appealability of an order of the probate court is determined not from its form, but from its legal effect." (*Estate of Martin* (1999) 72 Cal.App.4th 1438, 1442.) However, Chabad raises no argument on appeal with respect to the grant of summary adjudication; and contrary to Chabad's argument, we do not agree that the legal effect of striking the Objection and Counterclaim was to adjudicate either Trustee's Petition or Chabad's affirmative claims. Any adjudication of Trustee's Petition was based on Trustee's motion for and Chabad's opposition to summary adjudication; and given the court's explanation of its ruling striking Trustee's Objection and Counterclaim (discussed in the next paragraph), there was no adjudication of Chabad's claims against Trustee.

Trustee, in contrast, argues that the statute does not apply, because that part of the Order on appeal — i.e., the striking of Chabad's Objection and Counterclaim — did not direct or allow payment of any claim. An exchange between Chabad's counsel and the court at the hearing supports Trustee's position. When Chabad's counsel summarized the court's sua sponte ruling as "dismissing the cause of action for breach of contract and unjust enrichment," the court corrected counsel, explaining, "Well, not so much dismissing but just saying it needs to be presented properly." Minutes later, when counsel for Chabad suggested that, instead of the Objection and Counterclaim, Chabad could have filed an "objection" to the Petition and a separate "petition seeking the relief

10

for unjust enrichment and breach of contract" against Trustee, the court indicated "at least procedural[ly] it would be presented correctly."

Rather than attempting to present its claim "properly" or "correctly," however, Chabad appealed the ruling striking the Objection and Counterclaim. Because that ruling did not dismiss any claim by Chabad, it cannot be considered a refusal to direct or allow a payment to Chabad for purposes of the statutory grant of appellate jurisdiction under Probate Code section 1300, subdivision (d). Even if we assume that the grant of summary adjudication "[d]irect[ed] or allow[ed] payment of a . . . claim" to Trustee on her Petition sufficient to confer appellate jurisdiction under Probate Code section 1300, subdivision (d), Chabad does not challenge the summary adjudication ruling that Trustee is entitled to the Genworth policy benefits. The only error asserted by Chabad in this appeal is the striking of the Objection and Counterclaim without leave to amend.

In any event, we will assume without deciding that the sua sponte ruling *was* a refusal to direct or allow a payment to Chabad and, therefore, that Probate Code section 1300, subdivision (d) provides the statutory basis for appellate jurisdiction to review the ruling. We will next consider whether, assuming statutory jurisdiction for the appeal, the Order — an unsigned minute order striking a pleading — is an appealable order.

C.      *Section 581d*

The parties have not directed us to, and our research has not disclosed, any provision in the Probate Code that arguably applies either to striking pleadings or to appealing from unsigned minute orders. Accordingly, "the rules of practice applicable to

11

civil actions . . . apply to, and constitute the rules of practice in" the underlying proceedings here that resulted in the striking of Chabad's Objection and Counterclaim and in the entry of the Order and, consequently, in our handling of these issues on appeal. (Prob. Code, § 1000.) In this latter regard, the Law Revision Commission comments to Probate Code section 1000 expressly provide that, unless the Probate Code provides otherwise, "*the general rules of practice apply to . . . appeals, and other matters of procedure.*" (Cal. Law Revision Com. com., 52 West's Ann. Prob. Code (2002 ed.) foll. § 1000, p. 459, italics added.)

As part of these general rules of practice, therefore, since orders striking answers, counterclaims and cross-complaints are not appealable orders in non-probate civil appeals (see cases cited in part II.A., *ante*), we have no difficulty concluding that an order striking an objection and counterclaim to a petition in probate is not an appealable order either.

Likewise, as part of these general rules of practice, for a "dismissal" to "constitute [a] judgment[] and be effective for all purposes" — including the right to appeal — it "shall be in the form of a written order *signed by the court* and filed in the action." (§ 581d, italics added.) Indeed, in the parties' letter briefs, Chabad and Trustee agree that section 581d is applicable to the Order here, and we so conclude.[13] Thus, "[a]n order

---

13    We find further support for our conclusion that section 581d applies in probate proceedings, knowing that "section 581 . . . , providing for dismissals, is applicable to will contests" (*Voyce v. Superior Court* (1942) 20 Cal.2d 479, 484), and former section 583, which also provided for dismissals, applies in probate (*Estate of Morrison* (1932) 125 Cal.App. 504, 509).

12

that is not signed by the trial court does not qualify as a judgment of dismissal under section 581d." (*Powell v. County of Orange* (2011) 197 Cal.App.4th 1573, 1578 [unsigned minute order of dismissal for failure to prosecute under §§ 581, subd. (b)(4) & 583.410].) This has been the law for more than a half century. (*Powell*, at p. 1578 [" 'prior to 1963, under section 581d a dismissal in the form of a[n unsigned] minute order was proper' ".)[14]

For these reasons, the Order here — *striking* the Objection and Counterclaim, but *not dismissing* anything — is not appealable. Absent a basis for exercising jurisdiction, we have no choice but to dismiss the appeal. (*Cole v. Rush* (1953) 40 Cal.2d 178 [dismissal of appeal from order sustaining demurrer without leave to amend]; *Art Movers, Inc. v. Ni West, Inc.* (1992) 3 Cal.App.4th 640, 645 (*Art Movers*) [appellate court "*must* dismiss an appeal from a nonappealable order" (italics added)].)

In an attempt to create jurisdiction, in its letter brief Chabad suggests a number of alternatives. None is persuasive.

First, Chabad suggests that the Order "substantially compl[ies] with [section ]581d in light of the widespread electronic filing now available in courts." We disagree. Without the required signature, there is *no* compliance. Further, electronic filings may

---

14      The Order concludes in part as follows: "The minutes constitute the order of the court and no formal order is required." At oral argument, counsel for Chabad suggested that this statement excused the requirement of section 581d that, to be an appealable order, the Order here had to be signed. We disagree. We are unaware of any authority, and counsel has not directed us to any, that allows a trial court to abrogate section 581d's requirements that, for a dismissal to be effective as an appealable order, the dismissal must be (1) written, (2) *signed by the court* and (3) filed in the action.

contain electronic signatures.  In any event, there is no indication that the Order here was electronically filed.

Second, we decline Chabad's invitation that we "order the trial court to sign the Order *nunc pro tunc* as of June 30, 2014" (the date of the hearing and court's minutes). Chabad tells us that the trial court "[c]learly" intended the Order to be a section 581d order of dismissal, because the court granted summary judgment.  To the contrary, there is no indication, either in the reporter's transcript or the Order, that the court intended to dismiss anything.  Indeed, the court *denied* summary judgment, granting only summary adjudication; and an order granting summary adjudication is not an appealable order. (*Jennings*, *supra*, 8 Cal.4th at p. 126.)  Finally, although Chabad cites us to four opinions in which the appellate courts directed the trial courts to enter a judgment nunc pro tunc to the date of a nonappealable order, in each the nonappealable order left nothing for the trial court to do.[15]  In contrast, here, the Order left in place Trustee's claim for money

---

15    In *Palazzi v. Air Cargo Terminals, Inc.* (1966) 244 Cal.App.2d 190, 192, the plaintiff appealed from a judgment on a jury verdict, but one of the causes of action had been disposed of by a nonsuit without a signed order of dismissal.  In *Dye v. Caterpillar* (2011) 195 Cal.App.4th 1366, 1373, footnote 7, and *Donohue v. State of California* (1986) 178 Cal.App.3d 795, 800, the plaintiff appealed from an order granting the defendant's motion for judgment on the pleadings.  In *Dominguez v. City of Alhambra* (1981) 118 Cal.App.3d 237, 242, and footnote 1, the plaintiff appealed from an order sustaining the defendants' demurrer to all causes of action between that plaintiff and the demurring defendants.

Chabad also refers us to both *Norton v. City of Pomona* (1935) 5 Cal.2d 54 and *Bed, Bath & Beyond of La Jolla, Inc. v. La Jolla Village Square Venture Partners* (1997) 52 Cal.App.4th 867, but in these cases there was no issue about an appellate court ordering entry of an appealable order or judgment nunc pro tunc to a certain date in order to obtain appellate jurisdiction.  In *Norton*, the *trial court* ordered entry of judgment nunc pro tunc to the date of the order for judgment, and the Supreme Court merely confirmed

damages against Chabad, and at the hearing the court suggested to Chabad that there may be a *proper* procedure to both object to the Petition and to assert claims against Trustee.

Third, citing *Olson v. Cory* (1983) 35 Cal.3d 390 (*Olson*), Chabad asks that we exercise our discretion to treat its notice of appeal as a petition for writ of mandate and proceed with the briefing that has been filed. In *Olson*, our high court treated an appeal from a nonappealable order as if it were a writ proceeding, because "the record sufficiently demonstrates the lack of adequate remedy at law necessary for issuance of the writ."[16] (*Olson*, at p. 401.) Chabad has not attempted to make such a showing. Nor could it on the record here, where Chabad has asserted only claims for money damages, has not argued the inability to appeal from a final judgment on the Petition and has not attempted to submit procedurally proper pleadings to the trial court in the first instance. Moreover, because "[t]he interests of clients, counsel, and the courts are best served by

that the *trial court's* " 'power to enter judgments *nunc pro tunc* is inherent.' " (*Norton*, at pp. 61-62.) In *Bed, Bath & Beyond*, the trial court entered a written order granting summary adjudication after entering the *final judgment* — i.e., a statutorily appealable document — and on appeal we deemed the written order to be filed nunc pro tunc to the date of the ruling on the summary adjudication motion, because that was the request that preceded entry of the order in the trial court, *not* because the order had to be filed in order to preserve appellate jurisdiction. (*Bed, Bath & Beyond*, at pp. 883-884 & fn. 11.)

16      In particular, *all other substantive issues had been resolved*, so that dismissal of the appeal on the sole remaining issue would have resulted in unnecessary delay in the final disposition of the litigation. (*Olson*, *supra*, 35 Cal.3d at p. 401.) The Supreme Court later acknowledged "the unusual circumstances that the [*Olson*] case presented" (*Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 744), and we agree that a request to treat an appeal from a nonappealable order as a writ petition " 'should only be granted under [the most] extraordinary circumstances' " (*Wells Properties v. Popkin* (1992) 9 Cal.App.4th 1053, 1055). As we explain in the text *post*, Chabad has not shown that the circumstances here are either unusual or extraordinary.

maintaining, to the extent possible, bright-line rules which distinguish between appealable and nonappealable orders[,]" we respect the "[s]trong policy reasons" that underlie the one final judgment rule.[17] (*Mid-Wilshire Associates v. O'Leary* (1992) 7 Cal.App.4th 1450, 1455.) Accordingly, we decline to exercise our discretion to treat Chabad's appeal as a writ proceeding.

Finally, Chabad tells us that, regardless of section 581d's requirement that an order of dismissal be in writing and signed by the court in order to be appealable, "[a]ppellate jurisdiction . . . [may] be independently based on Probate Code [section] 1300." In making this argument, Chabad confuses two independent mandatory requirements for appellate jurisdiction: There must be *both* (1) a statute that allows for an appeal (*Griset*, *supra*, 25 Cal.4th at p. 696), *and* (2) an appealable order (*Jennings*, *supra*, 8 Cal.4th at p. 126). For purposes of this appeal, we have assumed that Probate Code section 1300, subdivision (d) provides the statutory basis that allows for an appeal. (Pt. II.B., *ante*.) Given section 581d's requirements, however, there is no appealable order.

Accordingly, because the Order — an unsigned minute order — is not appealable, we lack jurisdiction to consider Chabad's appeal and must dismiss it on this basis.

---

17     These policies are based on the premise that "piecemeal disposition and multiple appeals tend to be oppressive and costly": e.g., rather than ending litigation, interlocutory appeals tend to result in a multiplicity of appeals; early resort to the appellate court may produce uncertainty, or at a minimum delay and potential futility, in the trial court; the trial court may change a ruling or make a different ruling that obviates an interlocutory appeal; later actions by the trial court provide a more complete record that may affect the appearance of earlier error or establish its harmlessness; and a full adjudication by the trial court will assist the reviewing court to remedy existing error by allowing for more specific directions on remand. (*Kinoshita v. Horio* (1986) 186 Cal.App.3d 959, 966.)

(*Jennings*, *supra*, 8 Cal.4th at p. 126 [reviewing court must raise jurisdictional issue on its own whenever a doubt exists as to whether appeal is taken from a final judgment or appealable order]; *Art Movers*, *supra*, 3 Cal.App.4th at p. 645 ["the court, on its own motion, must dismiss an appeal from a nonappealable order".)

DISPOSITION

The appeal is dismissed.  Trustee is entitled to recover her costs on appeal from Chabad.  (Cal. Rules of Court, rule 8.278(a)(2).)


IRION, J.

WE CONCUR:


HUFFMAN, Acting P. J.


McINTYRE, J.

17